**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NEWTON AC/DC FUND, L.P.** and **ERIC S. MEYER**,<br><br>                Plaintiffs,<br><br>    -against-<br><br>**WEI "MAX" WU**,<br><br>                Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Case No.** |

Plaintiffs Newton AC/DC Fund, L.P. (the "Fund") and Eric S. Meyer, by way of Complaint against Wei "Max" Wu, alleges as follows:

## INTRODUCTION

1.      Wu solicited millions of dollars of investments by selling a cryptocurrency he created.  He then breached contractual promises to develop certain products and governance features related to it.  His actions have unjustly enriched him at his investors' expense.

## PARTIES

2.      The Fund is a Delaware limited partnership, whose partners are domiciled in Massachusetts and Florida.

3.      Meyer is a domiciliary of Massachusetts.

4.      Upon information and belief, Wu is an individual who, during the relevant time period, resided and/or conducted business at 315 West 36th Street, Tenth Floor, New York, New York 10018 and currently resides in China.

## JURISDICTION AND VENUE

5.      The Court has federal jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

6.    The Court has personal jurisdiction over Wu because he transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the disputed conduct throughout the United States, including in the Southern District of New York. Further, Wu's actions were directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in the Southern District of New York.

7.    Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Wu is deemed to reside in any judicial district in which he is subject to the Court's personal jurisdiction, because Wu provides and markets his services within the United States, and in this district, thus establishing sufficient contacts to give the Court personal jurisdiction over him. In addition, Wu's conduct against the Plaintiffs has occurred, in part, within the state of New York as the Plaintiffs suffered the harmful effects of Wu's conduct within the state of New York.

## FACTUAL ALLEGATIONS

8.    Wu, using the pseudonym "Spartacus," hatched a scheme to create a pool of assets that he promised would generate massive returns for investors. Wu called the investors in the scheme the "community" of "Spartacus DAO."

9.    A "DAO" is a "Decentralized Autonomous Organization" which, in common practice, involves a group of stakeholders coming together to make decisions, typically facilitated by a blockchain-based voting system. By branding his scheme as a DAO, Wu misled investors, including the Plaintiffs, into believing they would have some say in the direction of the venture.

10.    In contrast to this pitch of decentralization and "community" governance, Wu was the sole operator of Spartacus DAO with any managerial authority, which he used to take advantage of investors. Starting no later than October 25, 2021, Wu engaged in a pattern of conduct that included marketing and selling unregistered securities to the Plaintiffs and others.

Defendant ultimately breached promises he had made to the Spartacus DAO "community," including the Plaintiffs, who received nothing while Wu kept more than $35,000,000 of their invested funds.

11.     To accomplish this scheme, Wu took advantage of a popular group investment structure wherein a group of persons contribute "liquidity" to a pool of funds. Wu represented that the funds would be contributed to a common "treasury" and related cryptocurrency wallets acting as "liquidity pools," the value of which he promised would grow through various ventures and projects that he would oversee, including employing "strategies to earn risk-adjusted return with [community] governance." Wu also promised in a series of blog posts to build various products with the funds and return profits from those products to the investors, including the Plaintiffs.

12.     In furtherance of the scheme, Wu solicited investments in his venture by publicizing and conducting a sale of blockchain-based digital assets, or cryptocurrency, called SPA tokens to the Plaintiffs and other U.S. persons on social media platforms including Discord and Twitter, as well as prominently on the Spartacus website and blog. Wu did not take any action to prevent access to these publications or sales by U.S. persons, including the Plaintiffs.

13.     SPA tokens are fungible blockchain-based assets that Wu promised would be the governance token for Spartacus DAO, meaning that holding a token would enable someone to vote in the management of the DAO. Beginning on or about October 31, 2021, Wu sold 30,000 SPA tokens at a price of approximately $10 per token on a first-come, first-serve basis—including, on information and belief, to cryptocurrency wallets Wu himself controlled. As time went on, Wu minted and sold more SPA tokens at various prices, on each occasion promising that the returns would be used to build value for holders of the tokens. He did so through an extensive marketing campaign on the Spartacus website and social media.

14.     Despite his many promises, Wu failed to manage Spartacus DAO.  Instead, he effectively disappeared with sole control of its accumulated funds.

15.     Wu had sole control over the "treasury," which accumulated more than $61,000,000 worth of assets by April 2022.  Wu held the private keys to the blockchain-based technology holding the funds.  Wu made promises of "community"-based control, governance, and voting to SPA investors, so investors like the Plaintiffs believed that they could vote pro rata on the management of the venture.  Instead, Wu has sole control of the substantial pool of funds and effectively ignored all recommendations or votes of the community of SPA investors.

16.     Investors raised concerns about the status of the project.  On Discord, Wu called these concerned investors "[…value] hunters" and disregarded their complaints, promising "a rising floor for SPA and [that he would] continue to build a valu[able] foundation for SPA."

17.     Wu did two things to address concerns.  First, on or about April 6, 2022, Wu made a Discord post titled, "Announcing Spartacus 2.0: The next phase of Spartacus Finance."  In that post, Wu announced that he would be creating a new for-profit venture for Spartacus DAO and the SPA holders: a decentralized cryptocurrency exchange called Spartacus Exchange ("SPEX").

18.     In the post, Wu promised that current holders of SPA could redeem their tokens at an amount he referred to as their risk-free value ("RFV"), based on a "snapshot" (or recorded list of holders) taken approximately 10 minutes before the announcement.  According to Wu, the RFV could be calculated by accounting for the value of the "treasury" in relation to the number of SPA tokens investors had already contributed to a particular pool of assets called a "staking pool."

19.     Wu did not want investors to remove their funds from the staking pool.  And so he offered incentives to investors who did *not* redeem their SPA tokens.  In particular, he enticed investors with assurances of future returns, including "buyback[s]" of SPA, to "maintain[] constant

buy pressure" which would support the market for SPA and inflate its value. Further, he promised perpetual returns to SPA holders by way of "emissions" (essentially additional token rewards paid out over time), as well as allocations of an additional, second security—the fungible token termed "SPEX."

20.    The second thing Wu did to address concerns was to create an illusion of participatory governance. Wu orchestrated a vote of SPA holders on April 7, 2022, where voters could respond with only a simple indication of yes or no on a proposal that included the redemption option and approval to build Spartacus 2.0. The vote passed with 99.99% in favor and 00.01% against.

21.    But the redemption option (essentially a tender offer) was illusory. Wu sprung it upon investors without warning based on a snapshot of holdings already taken and announced it only on the Spartacus Discord server, which, despite being the main channel of ongoing communication, was a forum where Wu had banned participants who questioned his governance.

22.    Whether it was because investors believed in the promise of Spartacus 2.0, or because a substantial amount of them did not even know about the vote, roughly half of the investor-held SPA tokens were not redeemed and, as a result, half of the assets held prior to April 6, 2022, remained in the "treasury" after the redemption—totaling roughly $35,000,000.

23.    On information and belief, prior to the announcement, Wu accumulated additional SPA tokens in anticipation of the redemption which he, of course, controlled. Thus, Wu personally profited from his insider knowledge of the timing and price of the redemption. In particular, on information and belief, Wu used 18 distinct cryptocurrency wallets to directly reap proceeds in excess of $4,300,000. Thus, the single biggest participant in the redemption was Wu himself. In addition, on information and belief, cryptocurrency wallets that Wu controls were used to send

funds to Tornado Cash, a cryptocurrency "mixer" used to obfuscate blockchain transactions and which is subject to sanctions by the Office of Foreign Assets Control.

24.     The Fund purchased and holds 7,241 SPA tokens, about 2.6% of the total circulating supply of approximately 277,000 SPA tokens.  Meyer purchased and holds an additional 5,100 SPA tokens, or about 1.8% of the total circulating supply.  Wu persuaded the Plaintiffs to believe they could use SPA for governance through his assurances, coupled with the misleading one-time redemption that did result in actual gains for some investors, who had purchased SPA at lower prices prior to the redemption.  As holders of SPA tokens, the Plaintiffs are entitled to their pro rata share of the "treasury" and related assets pursuant to the promises made by Wu.

25.     On September 22, 2022, five months after the Spartacus 2.0 announcement, Spartacus DAO investors—holders of SPA tokens who were told by Wu that their tokens were voting shares in the venture—organized and held a vote of no confidence in Wu's leadership of Spartacus DAO.  The purpose of this vote—which was organized and conducted by holders of SPA and not Wu himself—was to dissolve the Spartacus DAO and to give token holders another opportunity to redeem their tokens.  In order to pass, the vote required that both a supermajority (75%) and a quorum (20%) of SPA token holders vote in favor of dissolution.  The vote (the "Dissolution Vote") opened on September 22 and passed on September 29, 2022, with 100% of participants voting in favor of dissolution and redemption.

26.     In a breach of his contractual promises to treat the holders of SPA as governing members of the Spartacus DAO project, Wu refused to act in accordance with the results of the Dissolution Vote.  Both during and after the Dissolution Vote, Wu posted derogatory comments on Discord, calling voters RFV "looters" and "hunters" while simultaneously affirming SPA's status as a security dependent on his efforts.

27.     Wu later organized a vote of SPA holders regarding a "diversification" proposal (the "Diversification Vote").   The proposal was to invest "treasury" assets in other cryptocurrencies.  In introducing this proposal, Wu explicitly stated: "any allocation of the treasury assets will be subject to community vote."

28.     The Diversification Vote failed with 99.96% of represented interests voting no.

29.     Despite the overwhelming vote of "no," Wu represented that he intended to ignore the results of not only the Dissolution Vote, but also the Diversification Vote, by removing assets from the treasury despite the clear direction not to from governance voters that held SPA.

30.     To date, Wu has not allowed SPA holders to redeem their tokens despite the Dissolution Vote results which clearly satisfied supermajority and quorum requirements. Moreover, Wu has breached the results of a second vote—placing the assets of the treasury (including those of Plaintiff's) at significant risk of permanent loss.

## CAUSES OF ACTION

## COUNT I
### Breach of Contract

46.     The Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as if fully set forth herein.

47.     The Plaintiffs and Wu entered into contracts when they purchased SPA tokens in reliance on Wu's promises.

48.     In exchange for the Plaintiffs' purchases, Wu promised to implement certain features to support the Spartacus DAO, to help investors like the Plaintiffs generate profits from its purchased tokens, and to allow for token redemption opportunities.  In addition, Wu promised that SPA holders would have governing rights in the Spartacus DAO, including with respect to how funds would be used, as well as when and whether to redeem them.

49.     The Plaintiffs performed their obligations under these agreements by purchasing SPA tokens.

50.     Wu has yet to perform any of his contractual obligations to the Plaintiffs and has not honored the results of the no confidence vote to allow the Plaintiffs to redeem their SPA tokens. Further, the value of SPA tokens has at times decreased dramatically since the time of the vote and will likely continue to decrease while Wu improperly withholds the Plaintiffs' property.

51.     As a direct and proximate result of Wu's conduct, the Plaintiffs have suffered substantial damages in an amount to be determined at trial.

### COUNT II
### Unjust Enrichment

52.     The Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as if fully set forth herein.

53.     Wu has been enriched at the Plaintiffs' expense such that it would be against equity and good conscience to permit Wu to retain the money that he owes the Plaintiffs.

54.     Upon information and belief, Wu has benefited from withholding the Plaintiffs' investments by using the money to further development of other projects with no benefit to the Plaintiffs and for Wu's personal gain.

55.     It is against equity and good conscience to permit Wu to retain the money that he owes the Plaintiffs due to Wu's own conduct and by performing other illegal or inequitable actions to damage the Plaintiffs.  Wu has chosen not to honor the promises he made related to governance by SPA token holders during their initial investments and has instead refused to allow those holders to redeem their rightfully-owned tokens pursuant to the Dissolution Vote or at any time.

56.     As a direct and proximate result of Wu's wrongful retention of the Plaintiffs' investment, Wu has been unjustly enriched at the Plaintiffs' expense.

## COUNT III
### Imposition of a Constructive Trust

57.     The Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

58.     The Plaintiffs request this Court to impose a constructive trust upon the property taken from the Plaintiffs that Wu currently holds.

59.     Wu, through misleading statements, broken promises, and unlawful acts has obtained and held the Plaintiffs' cryptocurrency, which in equity and good conscience he should not be permitted to hold.

60.     The Plaintiffs and Wu are in a confidential or fiduciary relationship, as the Plaintiffs entrusted Wu with their investments.

61.     Further, as set forth above, the Plaintiffs purchased SPA tokens from Wu in reliance on Wu's promises.  The Plaintiffs invested in SPA tokens and Spartacus DAO based on Wu's promises to develop products and governance features related to those securities, including promises to provide investors with governance rights.

62.     As a result, Wu has been unjustly enriched.

63.     Upon information and belief, after obtaining cryptocurrency from the Plaintiffs (including pro rata amounts due to the Plaintiffs from the treasury), Wu has since improperly transferred some of those assets to accounts not approved by the Plaintiffs, including Wu's personal accounts, where he holds them in trading accounts under his personal name or in other blockchain-based wallets such that the amount owed to the Plaintiffs from the "treasury" and associated assets is spread across various known and unknown wallets, and cryptocurrency exchange accounts, under Wu's sole control.

64.     The cryptocurrency assets at issue are specific, identifiable property and can be traced to certain blockchain-base addresses, or to cryptocurrency exchange accounts.

## COUNT IV
### Breach of Fiduciary Duty

65.     The Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

66.     The Plaintiffs and Wu are in a confidential or fiduciary relationship.  This is because the Plaintiffs entrusted Wu with their investments, because Wu had superior position of influence over the investments, and because Wu had made agreements and assurances to the Plaintiffs about the use of their investments.

67.     Wu breached his fiduciary duty by stealing investment funds and failing to conduct honor votes among tokenholders and to abide by his promises to investors.

68.     As a direct and proximate result of these breaches, the value of SPA tokens has fallen and thus tokenholders like the Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT V
### Equitable Accounting

69.     The Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

70.     The Plaintiffs and Wu are in a confidential or fiduciary relationship.  This is because the Plaintiffs entrusted Wu with their investments, because Wu had superior position of influence over the investments, and because Wu had made agreements and assurances to the Plaintiffs about the use of their investments.

71.     The Plaintiffs purchased SPA tokens from Wu in reliance on Wu's promises.  The Plaintiffs invested in Spartacus DAO based on Wu's promises to develop products and governance features related to those securities, including promises to provide investors with governance rights.

72.     Despite repeated requests from investors, Wu has not provided any "community" investor, including the Plaintiffs, with necessary information regarding the assets in the treasury or associated with the Spartacus DAO.

73.     The Plaintiffs have no adequate remedy at law, as they are presently unaware of what types of assets currently make up the treasury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court enter a judgment against Wu, awarding them:

(1)     compensatory damages in an amount to be determined at trial,

(2)     rescissory damages,

(3)     imposition of a constructive trust over the property taken and held from the Plaintiffs that is currently held by Wu,

(4)     an injunction requiring Wu to honor the SPA holders' votes to dissolve the Spartacus DAO and redeem token holders' tokens,

(5)     an injunction preventing Wu from transferring or otherwise converting the assets in the Spartacus DAO treasury other than to comply with the foregoing,

(6)     equitable accounting, and

(7)     any other relief the Court deems just and proper.

Dated: Brooklyn, New York
        August 6, 2025

                                        /s/ William H. Newman

                                        _____
                                        William H. Newman
                                        33 Nassau Avenue, Second Floor
                                        Brooklyn, New York 11222
                                        Phone: (718) 218-3360
                                        Email: will@willnewmanlawyer.com

                                        *Attorney for the Plaintiffs*